**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| TARIQ MAQBOOL, | : | Civil Action No. 14-4066 (JMV) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| GARY M. LANIGAN, *et al.*, | : | |
| | : | |
| Respondents. | : | |
| | : | |

APPEARANCES:

Tariq Maqbool
New Jersey State Prison
P.O. Box 861
Trenton, NJ 08625
          Petitioner, *pro se*

Stephanie Davis-Elson
Assistant Prosecutor
Hudson County Prosecutor's Office
Administration Building
595 Newark Avenue
Jersey City, NJ 07306
          On behalf of Respondents.

**John Michael Vazquez, U.S.D.J.**

## I.     INTRODUCTION

Petitioner Tariq Maqbool ("Petitioner"), a prisoner currently confined at New Jersey State Prison in Trenton, New Jersey, has filed a *pro se* Petition (ECF No. 7, 9) for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  For the reasons explained in this Opinion, the Court will deny the Petition and will also deny a certificate of appealability.

## II.      FACTUAL BACKGROUND & PROCEDURAL HISTORY

The factual background and procedural history in this matter were summarized in part by

the New Jersey Superior Court, Appellate Division upon Petitioner's direct appeal.[1]

> Joong ["John"] Ahn owned a cell phone business in Philadelphia with his wife, where they also sold prepaid calling cards. Their nephew, Muni Ahn, also worked with them in the business. Defendant, as well as co-defendants Paul Reid and Zaid Tariq, managed separate cell phone businesses and engaged in the sale of prepaid calling cards.  Through the assistance of Jawad Mir and Amit Vishal, defendant arranged for the discounted sale of a significant quantity of prepaid calling cards to Joong and Muni Ahn. On October 31, 2002, Joong, Muni, Mir, and Vishal proceeded to co-defendant Paul Reid's store in Sayreville, where defendant and the three co-defendants held the four hostage at gunpoint.  As the four laid on their stomachs, defendant and the three co-defendants kicked and punched them.  After seizing the large amount of cash that Joong had brought to purchase the prepaid phone cards, defendant sat on Joong's back and placed a shopping bag around his face for about a minute.  When Joong struggled, defendant took a wire from an advertising board and strangled him with it until "he just stopped moving."
>
> Defendant then took Mir and Vishal at gunpoint to the front of the store and told them that they had to shoot Muni if they wanted to live.  After they refused, Mir and Vishal were dragged into the backseat of a car and driven around by co-defendant Zahid Tariq, accompanied by one of the Reids in the front passenger seat.  After having been driven around for approximately fifteen minutes, they stopped and switched cars, placing Mir and Vishal into a white SUV.  From there, they were driven around again until they stopped near what Mir believed to be a police precinct because he saw police cars parked nearby.  While stopped, the other Reid brother "came running from the back" and sat in the rear of the SUV.  Defendant entered the rear of the SUV across from Reid, took a gun from the Reid brother in the backseat, and handed it to Mir and Vishal, telling them to hold it tight so that their fingerprints remained on the gun. Defendant then threatened Mir saying, "I know your family back home.  So if you open your mouth, I'll kill them."  Mir and Vishal were then taken to a motel where they were given $10,000 each to

---

[1] The facts found by the Appellate Division are presumed correct pursuant to 28 U.S.C. § 2254(e)(1).

> remain silent.  At the motel, defendant stated: "He burned the car and the bodies in them."
>
> In the interim, about 1:30 a.m. on November 1, 2002, police and fire departments responded to a car fire in the parking lot of the Laidlaw Bus Company in Jersey City, across the street from the Hudson County Sheriff's Department and a substation of the Hudson County's Prosecutor's Office.  The bodies of Joong and Muni were found in the burned SUV, later identified as Joong's vehicle.  Joong had been hogtied and burned beyond recognition; he had to be identified through dental records. Muni had had his arms tied behind his back and had been shot. Dr. John Krolikowski performed the autopsy on Joong.  During the autopsy, no soot was discovered in Joong's airway, indicating that he was not breathing during the fire. Dr. Krolikowski opined that the cause of death was asphyxia. Medical examiner Lyla Perez performed the autopsy on Muni. Muni had duct tape around his hands and wires around his right ankle.  The top of his skull was fractured in many places, and his brain was exposed.  There was heat damage to his brain and to the bones of the skull, and traces of blood in the brain.  The blood in the brain was in part due to bullet wounds inflicted prior to death.  Soot and mucus was discovered in Muni's lungs, which together with the fact that his lungs were hyperinflated, indicated that he was alive during the fire.  Perez opined that the cause of Muni's death was blunt trauma to the head and brain, and smoke inhalation.

*State v. Maqbool*, Indictment No. 03-03-0430, 2007 WL 1661133 at *1-2 (N.J. Super. Ct. App. Div. June 11, 2007).

Petitioner and co-defendants, Paul Reid, Steven Reid, and Zaid Tariq, were charged with first-degree murder of Joong Ahn, N.J.S.A. § 2C:11–3a(1) or (2) (Count One); first-degree felony murder of Joong Ahn, N.J.S.A. § 2C:11–3a(3) (Count Three)[2]; first-degree murder of Muni Ahn, N.J.S.A. § 2C:11–3a(1) or (2) (Count Four); first-degree felony murder of Muni Ahn, N.J.S.A. § 2C:11–3a(3) (Count Five); first-degree armed robbery against Joong Ahn and Muni Ahn, N.J.S.A. § 2C:15–1 (Count Six); two counts of first-degree kidnapping of Joong Ahn and

---

[2] The Judgment of Conviction does not indicate that Petitioner was charged with, or convicted of, Count Two in the Indictment.

Muni Ahn, N.J.S.A. § 2C:13–1b (Counts Six and Seven); two counts of second-degree

kidnapping of Jawad Mir and Amit Vishal, N.J.S.A. § 2C:13–1b (Counts Nine and Ten); fourth-

degree aggravated assault by pointing a firearm against Joong Ahn, Muni Ahn, Jawad Mir, and

Amit Vishal, N.J.S.A. § 2C:12–1b(4) (Count Eleven); third-degree possession of a weapon

without a permit, N.J.S.A. §§ 2C:58–4, 2C:39–5b (Count Twelve); second-degree possession of

a weapon for an unlawful purpose, N.J.S.A. § 2C:39–4a (Count Thirteen); and second-degree

conspiracy to commit armed robbery, N.J.S.A. §§ 2C:5–2, 2C:15–1 (Count Fourteen).  The

Grand Jury also returned a Notice of Aggravating Factors as to Count One, subjecting defendant

to the death penalty, pursuant to N.J. Stat. Ann. § 2C:11–3.

Following a separate jury trial before the Honorable Paul M. De Pascale, J.S.C.,

Petitioner was convicted on all counts except Counts Nine, Ten, and Eleven.  During the penalty

phase of the trial, the jury declined to find any aggravating factors, and the death penalty was not

imposed.  Petitioner was sentenced on Count One to life imprisonment; on Count Four to a

consecutive life term; on Count Seven to a concurrent term of thirty years; and on Count Twelve

to a concurrent term of five years.  The remaining convictions were merged.  All sentences, other

than Count Twelve, were made subject to the No Early Release Act (NERA), N.J.S.A. § 2C:43–

7.2.  The Appellate Division affirmed Petitioner's conviction.  *Maqbool*, 2007 WL 1661133 at

*16.  The Supreme Court denied certification on September 7, 2007.  *State v. Maqbool*, 192 N.J.

478 (2007).

On December 20, 2007, defendant filed a petition for PCR, but he subsequently withdrew

it.  He refiled his petition on October 26, 2009.  On November 4, 2010, Judge De Pascale held oral

argument, determined an evidentiary hearing was not required, and denied defendant's petition for

PCR.  (ECF No. 19-90).  On January 7, 2013, the Appellate Division affirmed the PCR Court's

4

decision.  *State v. Maqbool*, Indictment No. 03-03-0430, 2013 WL 57683 (N.J. Super. Ct. App. Div. Jan. 7, 2013).

On June 28, 2013, the New Jersey Supreme Court denied Petitioner's petition for certification.  *State v. Maqbool*, 24 N.J. 118 (2013).  Petitioner filed the instant petition for habeas relief under § 2254 on September 12, 2014.  (ECF No. 7).  His Petition for Writ of Habeas Corpus raises eleven claims that are summarized as follows:

1. Trial court erroneously admitted Petitioner's post-arrest statements.

2. Trial court's jury instructions were erroneous.

3. Ineffective assistance of trial counsel for failing to obtain Petitioner's cellular phone record in support of an alibi.

4. Ineffective assistance of trial counsel for failing to obtain exculpatory recording from Petitioner's phone and for failing to introduce Petitioner's personal and business telephone records.

5. Ineffective assistance of trial counsel for failing to object to the admission of any of Petitioner's post-arrest statements.

6. Ineffective assistance of trial counsel for failing to object to the prosecution's suborning perjury.

7. Ineffective assistance of trial counsel for failing to investigate and present additional defense witnesses.

8. Ineffective assistance of trial counsel for failing to object to the trial court's accomplice liability instruction and failing to object to the court's response to a jury question.

9. Ineffective assistance of trial counsel for failing to object to admission of inadmissible hearsay.

10. Ineffective assistance of appellate counsel for failing to raise the trial court's admission of inadmissible hearsay on direct appeal.

11. Trial/PCR judge's bias against Petitioner.

Respondents filed their full Answer on June 1, 2016.  (ECF No. 19.)  Petitioner filed a traverse on October 25, 2016.  (ECF No. 23.)

## III.    STANDARD OF REVIEW

Section 2254(a) permits a court to entertain only claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Petitioner has the burden of establishing each claim in the petition.  *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013).  Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254 ("AEDPA"), federal courts in habeas corpus cases must give considerable deference to determinations of state trial and appellate courts.  *See Renico v. Lett,* 599 U.S. 766, 772 (2010).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Where a state court adjudicated a petitioner's federal claim on the merits, a federal court "has no authority to issue the writ of habeas corpus unless the [state c]ourt's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the

6

facts in light of the evidence presented in the State court proceeding.'" *Parker v. Matthews*, 567 U.S. 37, 40-41 (2012) (quoting 28 U.S.C. § 2254(d)).

"[C]learly established law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme Court's] decisions," as of the time of the relevant state-court decision. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000))). If a decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Williams*, 529 U.S. at 413. As to 28 U.S.C. § 2254(d)(1), a federal court must confine its examination to evidence in the record. *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011).

Where a petitioner seeks habeas relief, pursuant to § 2254(d)(2), on the basis of an erroneous factual determination of the state court, two provisions of AEDPA apply. First, AEDPA provides that "a determination of a factual issue made by a State court shall be presumed to be correct [and] [t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Miller-El v. Dretke*, 545 U.S. 231, 240 (2005). Second, AEDPA precludes habeas relief unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

In addition to the above requirements, a federal court may not grant a writ of habeas corpus under § 2254 unless the petitioner has "exhausted the remedies available in the court of the State." 28 U.S.C. 2254(b)(1)(A). To do so, a petitioner must "fairly present all federal claims to the highest state court before bringing them in a federal court." *Leyva v. Williams*, 504 F.3d 357, 365

(3d. Cir. 2007) (citing *Stevens v. Delaware Corr. Ctr.*, 295 F.3d 361, 369 (3d Cir. 2002)). This requirement ensures that state courts "have 'an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights.'" *Id.* (citing *United States v. Bendolph*, 409 F.3d 155, 173 (3d Cir. 2005) (quoting *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981)).

Even when a petitioner properly exhausts a claim, a federal court may not grant habeas relief if the state court's decision rests on a violation of a state procedural rule. *Johnson v. Pinchak*, 392 F.3d 551, 556 (3d. Cir. 2004). This procedural bar applies only when the state rule is "independent of the federal question [presented] and adequate to support the judgment." *Leyva*, 504 F.3d at 365-66 (citing *Nara v. Frank*, 488 F.3d 187, 196, 199 (3d Cir. 2007); *see also Gray v. Netherland*, 518 U.S. 152 (1996), and *Coleman v. Thompson*, 501 U.S. 722 (1991)). If a federal court determines that a claim has been defaulted, it may excuse the default only upon a showing of "cause and prejudice" or a "fundamental miscarriage of justice." *Leyva*, 504 F.3d at 366 (citing *Lines v. Larkins*, 208 F.3d 153, 166 (3d Cir. 2000)).

To the extent that a petitioner's constitutional claims are unexhausted and/or procedurally defaulted, a court can nevertheless deny them on the merits under 28 U.S.C. § 2254(b)(2). *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007) ("Here, because we will deny all of [petitioner's] claims on the merits, we need not address exhaustion"); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005) (considering procedurally defaulted claim, and stating that "[under 28 U.S.C. § 2254(b)(2), we may reject claims on the merits even though they were not properly exhausted, and we take that approach here").

## IV.    ANALYSIS

The Petition raises eleven grounds for relief, eight of which are ineffective assistance of trial and/or appellate counsel.  For the reasons explained in this section, the Court finds that Petitioner's claims do not warrant federal habeas relief.

### A.    Trial Court's Erroneous Admission of Post-Arrest Statements

Petitioner asserts that the trial court's admission of his post-arrest statements as well as any other evidence, were in violation of his Fourth Amendment right to be from unreasonable search and seizure.  (ECF No. 9-1 at 11-20.)  Petitioner argues that in light of his illegal arrest, any statements made to law enforcement should have been suppressed.  Petitioner initially raised this claim in his *pro se* supplemental brief on direct appeal.  *State v. Maqbool*, Indictment No. 03-03-0430, 2007 WL 1661133 at *3 (N.J. Super Ct. App. Div. June 11, 2007).  The Appellate Division affirmed the conviction without addressing this particular claim.  *Id.* at 15.[3]  However, the Appellate Division did address Petitioner's Fifth Amendment claim that his statements were improperly admitted despite the state's failure to apprise him of the criminal complaint against him, which Petitioner essentially argued based on the same set of facts.  *Id.* at *3-8.  Petitioner subsequently raised this claim in his supplemental brief appealing the denied PCR petition.  *State v. Maqbool*, Indictment No. 03-03-0430, 2013 WL 57683 at *8 (N.J. Super. Ct. App. Div., Jan. 7, 2013).  The Appellate Division affirmed the PCR Court's denial and deemed all of the issues raised in his *pro se* supplemental filing unmeritorious.  *Id.* at *1.

---

[3] "[W]here the State has provided a full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494-95 (1976).  Here, the Appellate Division did not address Petitioner's Fourth Amendment claim on direct appeal. Therefore, the Court will address the merits of Petitioner's claim.

Petitioner argues that at the time of his arrest outside of a convenience store in Sayreville, New Jersey, an arrest warrant had not been issued for his arrest and there was no probable cause for his arrest.[4]  (ECF 9-1 at 12.)  Moreover, Petitioner contends that his arrest and subsequent interrogation was an unconstitutional investigatory tactic to obtain information about the murders. (*Id.* at 12-13.)

Petitioner's trial counsel filed a pre-trial suppression motion as to Petitioner's Fifth Amendment (as applied to the States through the Fourteenth Amendment) right to remain silent. At the hearing, Lieutenant Russo of the Hudson County Prosecutor's Office testified about his role at that state of the investigation, which included supervising the multi-jurisdiction arrest effort as well as conducting Petitioner's subsequent interrogation.  Petitioner's argument in the instant petition relies significantly on Lieutenant Russo's testimony on cross-examination at that hearing. The crux of Petitioner's trial counsel's line of questioning revolved around Petitioner's understanding of his *Miranda* rights.  The issue of the legality of the arrest or the existence of a warrant was not raised by any of the parties.  (ECF Nos. 19-51 at 41-111, 19-52 at 3-40.)

The Fourth Amendment, which is applicable to the States through the Fourteenth Amendment, guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV. Any evidence or statements stemming from an unlawful, warrantless arrest are usually "suppressible if the link between the evidence and the unlawful conduct is not too attenuated.  *I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1040-41 (1984) (citation omitted).  Nonetheless, warrantless public arrests based on probable cause are legal.  *United States v. Watson*, 423 U.S. 411, 423 (1976).  "Probable cause

---

[4] Members of the Hudson County Prosecutor's Office drafted a warrant dated November 1, 2002, that was not executed until November 4, 2002, one day after Petitioner's arrest.  (ECF No. 9-3 at 51.)

exists whenever reasonably trustworthy information or circumstances within an arresting officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been or is being committed by the person being arrested." *United States v. Laville*, 480 F.3d 187, 194 (3d Cir. 2007) (citations omitted).

The record reflects that at the time of Petitioner's arrest on November 3, 2002, law enforcement had significant information establishing Petitioner's role in the robbery and murders, including the statements provided by eyewitness, Jawad "Jay" Mir on November 2, 2002, as well several thousand dollars in United States currency that Petitioner gave to Mir and Amit "Andy" Vishal immediately after the murders. (ECF Nos. 19-63 at 7-9, 19-67 at 24-25.) Probable cause existed that Petitioner had committed murder and robbery and his arrest did not contravene the Fourth and Fourteenth Amendments. Consequently, Petitioner's argument that his post-arrest statements should be suppressed, as the fruit of an illegal arrest, fails. The state court's decision was not an unreasonable application of federal law. Therefore, the Court denies relief on this ground.

### B.     Trial Court's Jury Instructions

Petitioner next claims that the trial court's erroneous jury instructions violated his right to a fair trial. (ECF No. 9-1 at 5-11.) Petitioner challenges the trial court's jury instructions with respect to the causation requirement, the aggravated manslaughter charge and the principal/ accomplice liability charges.

### i.     Unanimity on Causation Instruction

Petitioner submits that the trial court's failure to require a unanimous causation finding on the murder charge was erroneous. (ECF No. 9-1 at 7-8.) Petitioner equates the principle of jury unanimity to the important criminal law doctrine of reasonable doubt. (ECF No. 9-1 at 5.)

Petitioner also cites to portions of the jury instruction and argues that the "trial court's charge pertaining to elements of unanimity was extremely confusing." (*Id.* at 7.) Respondents correctly assert that this particular claim is unexhausted, as Petitioner did not pursue this claim in his petition for certification to the New Jersey Supreme Court. (ECF No. 19 at 97.) The Appellate Division affirmed Petitioner's conviction without addressing this particular claim.

The exhaustion requirement is not a jurisdictional requirement to the exercise of habeas corpus jurisdiction over the merits of a state prisoner's claims and a district court may deny a claim on its merits despite non-exhaustion "if it is perfectly clear that the applicant does not raise even a colorable federal claim." *Granberry v. Greer*, 481 U.S. 129, 131, 135 (1987). Notwithstanding Petitioner's failure to exhaust this claim, the Court will proceed to address the substantive merits of the claim. 28 U.S.C. § 2254(b)(2); *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997) ("[Section 2254(b)(2) authorizes] federal courts to deny unexhausted claims on the merits." (emphasis added)).

At Petitioner's trial, medical examiner, Dr. John Krolikowski, presented his medical opinion of the cause of John Anh's death. The defense also presented their medical expert's conflicting opinion of Ahn's cause of death. In light of this, the trial court explained to the jury how the two conflicting medical examiners' opinions could be considered when applying the causation instruction. The relevant portions of the trial court's jury instruction on causation are as follows:

> Now, causation has a special meaning under the law. To establish causation, the State must prove two elements beyond a reasonable doubt. First, that but for the defendant's conduct, John Ahn would not have died.
>
> Second, that John Ahn's death must have been within the design or contemplation of the defendant. If not, it must involve the same kind of injury or harm as that designed or contemplated, and it must also

not be too remote, too accidental in its occurrence, or too dependent on another's volitional act to have a just or fair bearing on the defendant's liability, or on the gravity of his offense.

In other words, the State must prove beyond a reasonable doubt that John Ahn's death was not so unexpected or unusual that it would be unjust to find the defendant guilty of murder.

Let me give you a couple of examples, because that can be a difficult concept to understand.  If a defendant attempted to shoot his wife and he misses, with the result that his wife leaves and goes to her parents' country home, and while at the country home she takes a ride on a horse and falls off the horse and dies, nobody would think that the defendant would be guilty of murder, even though he did intend her death and attempt to kill her.

While it would satisfy the but for component, if he didn't shoot at her she wouldn't have gone to her parents' house, the death there is unconnected, so remote, so accidental in nature that it would be unfair to find the husband guilty of murder, to find that his act caused the death.  Okay?  Does everybody understand what I mean by that?  If he hadn't shot at her she wouldn't have gone to her mother's.  If she hadn't had gone to her mother's house, she wouldn't have rode the horse.  We don't follow that out to make it so absurd or unfair to hold him accountable.

Take the same scenario just for a second, and say he shoots at her and misses, but she, in an attempt to escape, runs into the street and is hit by a bus, okay, and she's killed.  But for his shooting at her she wouldn't have run into the street and she was killed by the bus.  Now, was her death within his design or contemplation?  Is it his plan?  Is that what he was trying to accomplish was her death, and she was killed by a bus because of what he did, so but for his act, she would not have been in the street and been killed.  And was her death really within his design and contemplation?  Yea.  So even though she didn't die from a gunshot wound, he's responsible for that death.  He caused it in the framework of the law.  That is causation.  Okay?  Everybody understand the difference?

We're talking about fairness, concepts of fairness that we're talking about.  Is it so remote, so unconnected with the act that satisfies the but for requirement as to be unfair to hold him responsible for it, or is it connected to it, is it within his design, within his contemplation.  Is that what he was trying to accomplish.  It's not simply a question of time, you know, how long after, it's a fairness issue, is it fair to hold hi[m] responsible, is that what he was trying to accomplish was

13

her death, and did he accomplish it. Okay? Do you understand in the context of those examples what we're talking about?

Now, in this case the defense has offered testimony bearing on the cause of John Ahn's death. The defense has offered testimony bearing on the cause of John Ahn's death. The defense proffered the testimony of Dr. Zugibe, an expert in forensic pathology, to establish that there was no evidence of strangulation, as opposed to the testimony of Dr. Krolikowski, the State's pathologist, who stated John Ahn's death was caused by mechanical asphyxiation.

If you find beyond a reasonable doubt that the State's pathologist's testimony in conjunction with the other evidence in the case establishes that the defendant purposely or knowingly strangled John Ahn to death, then causation has been established.

However, if you find John Ahn was not strangled to death, but died of some other cause, then you must perform the two-step analysis that I outlined for you a moment ago. First, that but for the acts of the defendant, would John Ahn have died on October 31, 2002.

Second, was the death of John Ahn within the design or contemplation of the defendant when he acted towards John Ahn. Obviously, your findings of fact regarding what acts of the defendant, if any, played a role in John Ahn's death are crucial on that point.

If you find that John Ahn's death occurred independent of any action on the part of the defendant, then the State has failed to prove that the defendant caused John Ahn's death. Even if you find that but for the actions of the defendant John Ahn would not have died on October 31, 2002, causation is not established unless the State further proves beyond a reasonable doubt that John Ahn's death was within the design or contemplation of the defendant when he acted towards John Ahn.

If you find beyond a reasonable doubt that the defendant strangled John Ahn, but before he could asphyxiate him he died of some other cause, heart attack or other, and that the defendant's attempt to asphyxiate John Ahn brought about his death, and further find that the death of John Ahn was what the defendant intended to accomplish by strangling him, then the State has proven the defendant caused John Ahn's death within the meaning of the law. Everybody understand what I mean by that?

Causation is important here for you to find the facts, and once again, let me remind you, I'm not giving you outcomes or possibilities here to steer you in any way, I'm just trying to explain the principle of causation.  Everybody understand that?

Now, all jurors do not have to agree unanimously concerning which form of murder is present, so long as all believe that it was one form of murder or the other.  However, for a defendant to be guilty of murder, all jurors must agree that the defendant either knowingly or purposely caused the death, or serious bodily injury resulting in the death of John Ahn.  Okay?

Now, let's take a second to explain that to you, because it may seem to run counter to what you think about the law.  In this case, the Legislature has said murder can be in one of two forms, either one is sufficient to be murder, and either one of two mental states is sufficient, so long as one is present.  Okay?  So if you find purposely that the defendant caused the death of John Ahn, it's murder.  If you find knowingly caused the death of John Ahn, it's murder.  If you find purposely caused serious bodily injury resulting in the death of John Ahn, it's murder.  If you find knowingly caused the death of John Ahn, that would be murder.

Now, six of you may believe that he purposely caused his death, six of you may believe he knowingly caused, or purposely caused serious bodily injury resulting in death, and your verdict would be guilty of murder, even though you're six-six as to which mental state he had, so long as you are all unanimous that he had one of the two required mental states, either purposeful or knowing conduct, and that he either caused his death, or caused serious bodily injury that then resulted in his death.  Everybody understand that?

(ECF No. 19-75 at 32-38.)

Liberally construing Petitioner's claim, he appears to be making a Fourteenth Amendment due process argument.  Here, the trial court required jury unanimity with respect to a finding of guilt.  However, the jury was not required to have unanimous decisions on which theory of causation resulted in the victim's death.  *See United States v. Yeaman*, 194 F.3d 442, 453 (3d Cir. 1999) (held that while a defendant in a federal criminal trial has a right to a unanimous verdict, that does not equate to "an instruction requiring unanimous agreement on the means by which each

element is satisfied." )  Accordingly, Petitioner fails to raise a valid constitutional claim.  Petitioner is denied habeas relief with respect to this issue.

ii.      Aggravated Manslaughter Instruction

Next, Petitioner claims that the trial court advanced an additional theory of the case when it charged the jury with the lesser included offenses of murder, such as aggravated manslaughter. (ECF No. 9-1 at 8.)  This claim is unexhausted as Petitioner raises this issue for the first time on federal habeas review.  Nonetheless, this Court will address the issue on the merits.  *See supra*, Part III.

The trial record reflects that there were no objections to the jury instruction on aggravated manslaughter with respect to John Ahn, either at the charge conference nor in the presence of the jury.  (ECF Nos. 19-72 at 8, 19-75 at 40.)   Petitioner argues that he was not "provided with a notice of this entirely new allegation."  (ECF No. 9-1 at 8-9.)  This Court agrees with Respondents that "Petitioner fails to recognize that the charge that was given was a lesser included charge to the murder relating to Joong Ahn."  (ECF No. 19 at 99.)  More importantly, the Due Process clause is only implicated when a jury instruction results in relieving the prosecution's burden of proof on an essential element of an offense.  *See Wallace v. Glover*, No. 09-4494, 2013 WL 1352250 at *13 (D.N.J. Apr. 2, 2013) (holding that trial court's *sua sponte* lesser-included jury instruction was not unconstitutional because it did not relieve the government of its burden to prove every element of the crime); *see also Waddington v. Sarausad,* 555 U.S. 179, 190–91 (2009) (observing that to prevail in a jury-instruction challenge, a petitioner must establish both that the instruction was ambiguous, inconsistent, or deficient, and that there is a reasonable likelihood that the jury applied the instruction in a manner that relieved the state of its burden to prove every element of the crime

beyond a reasonable doubt).  Petitioner fails to raise a claim for federal habeas relief under this argument.  Consequently, Petitioner is denied habeas relief.

    iii.      Accomplice/Principal Liability Instructions

Finally, Petitioner claims that the trial court's instruction on principal versus accomplice liability should have included an instruction that "the jury should resolve doubt in favor of the Petitioner and convict on the lesser charge."  (ECF 9-1 at 11.)

The trial court provided proper jury instructions according to New Jersey law, N.J.S.A. § 2C:2-6, on both accomplice and principal liability respectively.  (ECF No. 19-75 at 61-76.)  A review of the instructions does not reveal any impropriety; the content of the instructions certainly does not support Petitioner's contention that they "infected" his trial.  *See Porter v. Brown*, No. 04-4415, 2006 WL 2640624, at *8 (D.N.J. Sept. 12, 2006) (reviewing the high standard necessary to sustain a Due Process violation based on an erroneous jury instructions while noting that "questions relating to jury charges are normally matters of state law and not cognizable in federal habeas review" (citations omitted)).   As a result, Petitioner is denied relief on this claim.

    C.    <u>Ineffective Assistance of Counsel</u>

Petitioner next makes eight claims of ineffective assistance as to his trial and appellate attorneys.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth the standard governing claims of ineffective assistance of counsel.  First, the defendant must show that counsel's performance was deficient.  This requirement involves demonstrating that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.* at 687.  Second, the defendant must show that he was prejudiced by the deficient performance. *Id.*  This requires showing that counsel's errors deprived the defendant of a fair trial. *Id.*  "With respect to the sequence of the two prongs, the *Strickland* Court held that 'a court need not

17

determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.'" *Rainey v. Varner*, 603 F.3d 189, 201 (3d. Cir. 2010) (quoting *Strickland*, 466 U.S. at 697)).

Counsel's performance is deficient if his representation falls "below an objective standard of reasonableness" or outside of the "wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. In examining the question of deficiency, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. In addition, judges must consider the facts of the case at the time of counsel's conduct, and must make every effort to escape what the *Strickland* Court referred to as the "distorting effects of hindsight." *Id.* The petitioner bears the burden of showing that counsel's challenged action was not sound strategy. *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). Furthermore, a defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.* at 694.

 Ineffective assistance of appellate counsel is analyzed under the *Strickland* standard as well. *See Albrecht v. Horn*, 485 F.3d 103, 137 (3d Cir. 2007) (quoting *United States v. Mannino*, 212 F.3d 835, 840 n.4 (3d Cir. 2000)). The two-part *Strickland* test requires this court to first determine whether counsel's performance was deficient, which in the context of an appeal requires evaluation of counsel's failure to raise proper issues on appeal. *See Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996) ('[I]t is a well established principle that counsel decides which issues to pursue on appeal.") Secondly, Petitioner must show that but for his counsel's failure to raise the omitted issue, he would have prevailed on his appeal. *Pichardo v. Nelson*, No. 13-6930, 2015 WL 9412918 at *11 (D.N.J. Dec. 22, 2015) (quoting *Smith v. Robbins*, 528 U.S. 259, 285 (2000)).

When assessing an ineffective assistance of counsel claim in the federal habeas context, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," which "is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). "A state court must be granted a deference and latitude that are not in operation when the case involves [direct] review under the *Strickland* standard itself." *Id.* Federal habeas review of ineffective assistance of counsel claims is thus "doubly deferential." *Id.* (quoting *Cullen v. Pinholster*, 131 S.Ct. at 1403). Federal habeas courts must "take a highly deferential look at counsel's performance" under *Strickland*, "through the deferential lens of § 2254(d)." *Id.* (internal quotation marks and citations omitted).

1. Failing to Obtain Petitioner's Cellular Phone Records in Support of Alibi Defense

Petitioner alleges that his trial counsel was ineffective counsel due to counsel's failure to adequately investigate the case, particularly the cellular phone "tower records" that could have corroborated Petitioner's alibi defense. (ECF No. 9 at 24-30.) Petitioner stresses that the telephone records could have exonerated him because there was no "forensic evidence" tying him to the murders. (ECF No. 9 at 25.) As he did in his PCR proceeding, Petitioner argues that his cellular phone records which would have proven that he was approximately fifty miles away from the murder scene at the time of the crime. (ECF Nos. 19-17 at 5, 19-18 at 45.) The PCR Court dismissed the claim as unmeritorious of an evidentiary hearing. (ECF No. 19-90 at 24.) As Respondents correctly note, Petitioner failed to appeal the PCR Court's denial of this claim to the Appellate Division. (ECF No. 19 at 59.) Petitioner has therefore not exhausted this claim in state court as required by federal habeas law. *See* 28 U.S.C. § 2254(b)(1)(A). *See supra*, Part III. Nonetheless, the Court will address the merits of this claim.

At trial, the state presented the testimony of a Nextel Communications records custodian. (ECF No. 19-66 at 24-27.)  The custodian's testimony included records of outgoing calls that were made on the afternoon of the murders from decedent Joong "John" Ahn's cellular phone number and telephone number 848-391-1459 ("1459 number").  (*Id.* at 26-27.)  The records custodian was not able to verify the subscriber associated with 1459 number because it was not a number that Nextel Communications serviced.  (*Id.* at 29.)  State witness, Rajesh Goel, testified that Petitioner called him from the 1459 numbers two days before the murders.  (ECF No. 19-65 at 36-37.)  Also at trial, state witness, Manish Dhar, testified that he contacted Petitioner at telephone number 732-778-8008.  (ECF No. 19-67 at 17-18.)  Finally, a T-Mobile records custodian testified that the 1459 number was one of several telephone numbers issued to subscriber "Mahood Butt," that was identified as a "fraud account.  (ECF No. 19-68 at 6, 8-9.)  The custodian further testified that the account was only open from October 25, 2002 to November 7, 2002.  (*Id.*)

During the course of the PCR proceeding, Petitioner provided multiple certifications in support of his alibi from his father, brother, and a Sarah Mallick.[5]  (ECF No. 19-90 at 22.) However, as the PCR Court pointed out, only Petitioner's father's proffer would potentially support Petitioner's claim that he was at home at the time of the murders.  (*Id.* at 22-23.)

Almost five years after Petitioner's trial, the PCR Court granted Petitioner's motion for telephone records for telephone numbers 732-690-5590 and 732-778-8008 for the period from October 30, 2002 to November 4, 2002.  (ECF No. 19-16 at 1.)  Petitioner's efforts were unsuccessful, due to the telephone service provider's response that records were not stored beyond a five-year period.  (ECF No. 19-90 at 5.)

When denying this claim, the PCR Court noted:

---

[5]  Mallick's name is spelled as both "Mallick" and "Malick" throughout the record.

As far as Counsel's failure to investigate the cell phone records for the telephone number (732) 778-8008 is concerned, there is not credible evidence before me which establishes the relevance of that telephone number. There is evidence before me which establishes that that phone number is registered to the Defendant's brother, not the Defendant. To afford any evidential significance to that phone number, and this argument, one would have to accept the proposition that the owner of a retail cell phone store could not afford his own cell phone.

Here, even that would be insufficient insofar as direct evidence introduced during the trial specifically establish the Defendant did have a cell phone, albeit under a fraudulent account, with the number (848) 391-1459; and it was that cell phone that he was using. The record also established that it was this number that the victim called twice on the day of the murders.

The evidence of Defendant's access to and use of that cell phone was not simply billing records. Rather, a live witness testified that this Petitioner in his presence used that phone to call the witness to enable the witness to add that number to his phone's contact list to enable the witness to contact this Defendant subsequently, indicating an ongoing use of that same phone.

The requirement that the Court view the evidence presented in the light most favorable to the Petitioner does not go so far as to require the Court to suspend reality and accept any proposition regardless of its absurdity and inconsistency with credible evidence. While an investigation of the cell records for the number (732) 778-8008 could possibly have established the phone's usage in the area of the Defendant's home at the time of the crime, there is no credible evidence that such a call was made by this Defendant. The only results possible, even accepting the Petitioner's brother's testimony, would be to show a call on a phone registered to the Defendant's brother.

Counsel therefore did not fail to investigate any credible, relevant evidence in this regard.

Further, even if Counsel had amassed the evidence provided with his Petitioner, competent Counsel could not be faulted for failing to present it at trial.

This evidence, as with all evidence at trial, cannot be considered in isolation. Rather, competent counsel would have to consider how a

> jury would evaluate such evidence with respect to all the other evidence in the case.
>
> Counsel was aware that the Defendant himself had previously given two accounts of his whereabouts at the time of the murder, both of which were proven to be fabrications.
>
> If Counsel had presented yet a third version of events, that once again, he was not at the scene, relying upon the information provided in support of the Petition, then under those circumstances, there might actually be grounds upon which an ineffective argument could be supported.
>
> ***
>
> Given the overwhelming evidence of the Defendant's presence at the scene and of his guilt, and the flawed nature of this proffered alibi, there is no doubt that even if presented before the jury, the outcome of the trial would not have been effected.

(ECF 19-90 at 24-26, 29.)

Petitioner's trial theory was that the state's witnesses fabricated Petitioner's involvement in the crime to conceal their own role in the robbery and murder.  (ECF No. 19-53 at 53-66.)  Trial counsel argued that in the absence of physical evidence linking Petitioner to the murder, the jury would determine that the state's "star witness" Jawad Mir, falsely depicted himself as Petitioner's victim in order to exculpate himself from any wrongdoing.  (*Id.* at 55-56.)

Petitioner has not met *Strickland's* prejudice prong in order to ultimately prevail on this claim.  He has not shown a reasonable probability that but for his trial counsel's errors, "the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  This standard is more likely to be met by a verdict that is "only weakly supported by the record," as opposed to one with "overwhelming record support."  *Id.* at 696.  Here, the state's case against Petitioner included among other things, a motive and testimony from an eyewitness.  The PCR Court's determination that this claim was unmeritorious was not contrary to clearly established federal law.  As the PCR Court noted, Petitioner owned a cellular phone retail store and was observed to have had multiple

telephone numbers associated with him.  Given the deferential standard that this Court applies to the PCR Court's *Strickland* determination, Plaintiff has not met his burden.  The PCR Court's explanation was sound.  For the foregoing reasons, Petitioner is not entitled to federal habeas relief on this claim.

> 2. Failing to Obtain Exculpatory Recording from Petitioner's Phone and Failing to Introduce Petitioner's Cellular and Business Telephone Records

Petitioner next alleges that his trial counsel was ineffective for failing to obtain an audio recording of a state witness, Jiwad Mir, implicating himself in the murders and pleading for the Petitioner's help.  (ECF No. 9 at 30-33.)  He further contends that trial counsel also failed to obtain his personal and business telephone records.  Petitioner argues that he implored his trial counsel to pursue this recording of Jawad Mir that Petitioner recorded on his own cellular phone just days after the murders.  (ECF No. 9 at 31.)  Petitioner adds that "multiple state witnesses also confirmed the same in their statements to the police and, subsequently, at trial.  (*Id.* at 33.)  Respondents argue that Petitioner has not provided any evidence to support the existence of this recording and that the trial testimony does not support Petitioner's claim.  (ECF No. 19 at 62-63.)  Respondents also argue that Petitioner's account of whose inculpatory statement he recorded is inconsistent.  Although he now argues that he recorded Jiwad Mir, the investigators that conducted the interrogation testified at a suppression hearing that Petitioner told investigators that he recorded a conversation with Manish Dhar, not Jiwad Mir, shortly after the murders.

Petitioner first raised this ineffectiveness claim in his *pro se* supplemental brief to the PCR Court.  (ECF No. 19-17 at 8.)  The PCR Court denied Petitioner's Petition and the Appellate Division affirmed without expressly addressing this particular claim.  *State v. Maqbool*, Indictment No. 03-03-0430, 2013 WL 57683 (N.J. Super. Ct. App. Div. Jan. 7, 2013).

In denying Petitioner's claim, the PCR Court reasoned: "With respect to the alleged cell phone conversation, the Defendant has not provided any evidence to substantiate either the existence or content of this call. His statements relative to this ground therefore constitute mere bald assertions." (ECF No. 19-90 at 21.) After reviewing the trial testimony, this Court has not found testimony from any trial witnesses to support Petitioner's claim.

The PCR Court's determination was not contrary to clearly established federal law. *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010) ([B]ald assertions and conclusory allegations do not afford sufficient ground for an evidentiary hearing." (citations omitted). Given this Court's deferential standard of review, the PCR Court did not err in its findings or conclusions. For the foregoing reasons, Petitioner's request for relief pursuant to this claim is denied.

3. Failing to Object to the Admission of Any of Petitioner's Post-Arrest Statements

Petitioner next argues that his trial counsel was ineffective for failing to object to the admission of his post-arrest statements in violation of his right to remain silent pursuant to *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). (ECF No. 9 at 33-42.) In fact, Petitioner argues that he did not provide a statement at all, however, if this Court determines that he did, that statement was in violation of his right to remain silent. (*Id.* at 33.) Petitioner initially[6] raised this claim in his PCR petition. (*Id.*) The PCR Court summarily denied this claim along with other "remaining issues advanced in Counsel's Brief [because they were] either procedurally barred, rely upon either bald assertions or are supported by factual assertions of the Defendant and are therefore without merit.

---

[6] Petitioner unsuccessfully raised a *Miranda* claim on direct appeal, however his argument has since been modified to challenge the constitutionality of the actual waiver form. On direct appeal, Petitioner challenged the admission of the post-arrest statements based on his arrest on an invalid warrant, his illegal arrest, and his speaking with detectives while unware that a criminal complaint was filed or was soon to be filed against him. *State v. Maqbool*, Indictment No. 03-03-0430, 2007 WL 1661133 at *3-11 (N.J. Super. Ct. App. Div. June 11, 2007).

(ECF No. 19-90 at 19-30.)  The Appellate Division subsequently affirmed the PCR Court's denial with a cursory reference to this claim.  *State v. Maqbool*, Indictment No. 03-03-0430, 2013 WL 57683 *7 (N.J. Super. Ct. App. Div. Jan. 7, 2013).

Petitioner claims that the Hudson County Prosecutor's Office used a vague and confusing interrogation waiver form that "is unconstitutional on its face because it is by nature, designed to coerce or, at least, dupe suspects into waiving their rights."  (ECF No. 9 at 35.)  The crux of Petitioner's argument is that the waiver form he signed consolidates the language that indicates acknowledgement of a suspect's rights pursuant to *Miranda* with the waiver of those rights. Petitioner contrasts the form he signed to those used by other law enforcement agencies, which either use separate forms for the acknowledgement and for the waiver or separate the acknowledgement and waiver into two separate clauses.  (*Id.* at 37-38.)  Petitioner cites to *United States v. Obregon*, F.2d 1371, 1381 (10th Cir. 1984), arguing that separate forms for acknowledgement of rights and waiver be used.  *Id.  Obregon* is not binding on this Court, and the facts of *Obregon* involve a suspect that initially invoked his *Miranda* rights to another officer but later read the rights form and waived his right to remain silent in the presence of an officer who was unaware of the suspect's earlier invocation.  *Obregon*, 748 F.2d at 1377.  The factual distinctions in *Obregon* render it inapposite.

The specific waiver form at issue is a typed one-page document used by the Hudson County Prosecutor's Office.  (ECF 9-8 at 15.)  For purposes of this particular claim, the relevant portion begins with the following sentence: "Before we ask you any questions, you must understand your rights."  The form then sets forth the *Miranda* rights.  (*Id.*)  In the middle of the page, "waiver of rights" is written in all capital letters, centered, and underlined.  (*Id.*)  The following phrase is then printed:  "I have read this statement of my rights and I understand what my rights are.  I am willing

25

to make a statement and answer questions.  I do not want a lawyer at this time.  I understand and know what I am doing.  No promises or threats have been made to me no pressure of coercion of any kind has been used against me." (*Id.*)  Immediately, below this statement is Petitioner's signature as well as two witnesses' signatures along with the time.  (*Id.*)  The form includes two blank lines where the time can be entered.  The line at the top states, "4:15 PM" in handwriting, while the one at the bottom states, "4:17 PM" in handwriting.

Although, the Supreme Court has never the precise issue before the Court, it has addressed challenges to the actual *Miranda* rights provided in a particular case.  In *Duckworth v. Eagan*, 492 U.S. 195, 202 (1989), the Court held that *Miranda* warnings are not formulaic and do not require that law enforcement recite the rights exactly as provided in the *Miranda* decision ("Reviewing courts therefore need not examine *Miranda* warnings as if construing a will or defining the terms of an easement.  The inquiry is simply whether the warnings reasonably convey to a suspect his rights as required by *Miranda*.") (citation omitted, quotation marks omitted).  Petitioner has not demonstrated how the waiver form that he signed was inconsistent with *Miranda's* requirements.  The form sets forth the *Miranda* rights, the waiver warning is set forth in a manner to make it conspicuous, and the language preceding Petitioner's signature clearly state the effect of signing the form.  The Court will therefore deny habeas relief on this ground.

    4.  Failure to Object to the Prosecution's Suborning Perjury from a State Witness

Petitioner's further asserts that trial counsel was ineffective because counsel failed to object to the state's subornation of perjury both at the suppression hearing and the trial.  (ECF No. 9 at 42-49.)  Petitioner first raised this claim in his PCR petition as well as in his *pro se* supplemental PCR brief.  (ECF No. 19-17 at 7, No. 19-21 at 4.)  The PCR Court denied this claim as procedurally barred due to Petitioner's failure to raise the claim on direct appeal.  (ECF No. 19-90 at 9-11.)  The

Appellate Division summarily denied this claim along with other claims as bald assertions "insufficient to support a claim of ineffective assistance. *Maqbool*, 2013 WL 57683 at *8.

Petitioner argues that the State knowingly permitted Lieutenant Russo to perjure himself at both the suppression hearing and trial. Specifically, Petitioner claims that Russo fabricated testimony when Russo stated that he recalled telling Petitioner at the interrogation that Russo did not consider Petitioner's version of events to be true. Lieutenant Russo testified as follows at the suppression hearing testimony:

> RUSSO: Well, after he completed like about up to that point, I just told him, I says Tariq, a lot of this is a bunch of nonsense. This is not the truth. You're not telling me the truth. Let's take a deep breath. Let's take a step back. Let's take a break and let's talk about the truth here and I have reasons to tell you right now that this is not the truth.
>
> PROSECUTOR: And at that time, did you have reason to believe it was not the truth?
>
> RUSSO: Absolutely.
>
> PROSECUTOR: And what was that reason based on?
>
> RUSSO: I had briefings throughout and I think Maribel and his buddy Zaid or Zed were telling us a totally different version and involving his involvement, his alleged involvement. It wasn't what Tariq was telling me.

(ECF No. 19-51 at 58.) Lieutenant Russo gave similar testimony at the trial. (ECF No. 19-60 at 72-73.)

"[T]he state's knowing use of perjured testimony to obtain a conviction violates the Fourteenth Amendment." *Lambert v. Blackwell*, 387 F.3d 210, 242 (3d Cir. 2004). The Supreme Court has defined perjury as "false testimony [while under oath] concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty

memory." *United States v. Dunnigan*, 507 U.S. 87, 94 (1993).  In order for Petitioner to demonstrate that the allegedly perjured testimony was procured in violation of his due process rights, he must show that (1) "[Russo] committed perjury; (2) the government knew or should have known of his perjury; (3) the testimony went uncorrected; and (4) there is a reasonable likelihood that the false testimony could have affected the verdict." *Lambert*, 387 F.3d at 242.

Petitioner argues that Lieutenant Russo also falsely testified that he and/or members of his office had also interviewed Jay and Andy.  (ECF No. 9 at 46-47.)  Besides the fact that the record indicates that the interviews occurred, Respondents also note that the circumstances surrounding the interviews indicate that they occurred.  As Respondents point out, Petitioner was arrested with Zaid Tariq and they were both transported to the same location.  (ECF No. 19 at 70-71.)  Therefore, the fact that law enforcement conducting simultaneous interviews of both suspects is reasonable. Similarly, the record shows that Investigator Wagner returned to Petitioner's interview room with the trash bag of money that Petitioner hid in Maribel Aquino's home.  Thus, the odds of Aquino speaking with law enforcement either in her home or in an interview room at the same time that Petitioner was being interviewed, are high.  Additionally, the record indicates that Jawad "Jay" Mir spoke with law enforcement before Petitioner was apprehended.  Therefore, Lieutenant Russo's statements that he had already been interviewed were not false.  At a minimum, Petitioner has not shown that Russo perjured himself.  There is no basis to proceed to the remaining three prongs of *Lambert*, as Petitioner has not established that Russo committed perjury nor that the prosecutor engaged in any misconduct that would violate Petitioner's due process rights.

In light of the foregoing, Petitioner's claim - that his trial attorneys were ineffective for failing to make object to perjured testimony - fails. *See Alexander v. Shannon*, 163 F. App'x. 167, 173 (3d Cir. 2006) ("[Petitioner] has not established the requisite prejudice, and he thus cannot

show that counsel was ineffective for failing to object . . . ")) (citation omitted).  Moreover,

Petitioner's trial counsel could not have argued that the prosecutor suborned perjury in their

closing arguments as it was not supported by the record.  *United States v. Pelullo*, 964 F.2d 193,

218 (3d Cir. 1992) ("[D]efense counsel may not suggest that the Government has engaged in

prosecutorial misconduct, such as subornation of perjury, unless there is a foundation in the record

to support such charges.")  Moreover, given the deferential standard applied to the PCR Court's

decision on the issue, Plaintiff has failed to meet his burden.  Therefore, the Court will deny this

claim.

### 5.   Failure to Investigate and Present Additional Defense Witnesses

Petitioner claims that trial counsel was ineffective for failing to present an adequate defense

through proper investigation and presentation of key defense witnesses.  (ECF Nos. 9 at 57-60, 9-

1 at 1-5.)  Petitioner initially raised this claim in his counseled, and supplemental *pro se*, PCR

filings.  (ECF No. 19-17 at 5, 8-9.)  The PCR Court denied this claim as unmeritorious.  (ECF No.

19-90 at 18-21.)  The Appellate Division briefly assessed the proffered testimony of Maqbool

Hussesin, Adeel "Eddie" Maqbool and Sara Malick, before affirming the PCR Court's decision.

> Defendant contends his trial counsel was ineffective because he
> failed "to pursue an exculpatory witness."  In his PCR petition,
> defendant presented transcribed statements from his father, Hussein
> Maqbool; his brother, Adeel Maqbool; and a friend, Sara Mallick.
> His father and brother both stated defendant had been at their home
> in Parlin in the early morning hours of November 1, 2002.
> Defendant alleges that his counsel should have investigated these
> claims because they would have given him an alibi defense. We
> disagree.
>
> Two of the three alleged alibi witnesses did not provide defendant
> with an alibi. In her statement, Mallick only stated that defendant
> may have gotten into a verbal altercation with a few men in his store
> earlier in the night of October 31, 2002.  This was before the murders
> were committed. Defendant's brother stated he returned home
> between 2:30 a.m. and 3:00 a.m. on November 1, 2002 and saw

29

> defendant lying on the couch in the living room. This was after the murders occurred. Therefore, neither of these witnesses provided defendant with an alibi.
>
> Defendant's father alleged he went to bed between 10:00 p.m. and 11:00 p.m. He then got up around 1:00 a.m. to say his prayers and saw defendant speaking to someone on the telephone in the living room. The problem with this account is that, if it were true, defendant would have been able to personally provide this information to his attorney in their preparation for trial. He never asserts that he did so. Instead, he alleges his father told counsel about this alibi, but counsel failed to follow up on it. However, defendant's father's statement contains no allegation that he ever informed defendant's counsel of this claim. Under these circumstances, Judge De Pascale properly found that "[c]ounsel cannot be faulted" for not investigating a claim defendant and his father kept to themselves until years after the trial.
>
> Just as significantly, defendant had already provided the police with two conflicting accounts of his whereabouts on the night of the murders. He first claimed he was at a motel with his girlfriend. When confronted with evidence that disproved this story, defendant admitted he was at the scene. Even if defendant's father's claim had been made known to defense counsel, he would not have been ineffective if he declined to a raise a third, totally inconsistent account to the jury. Therefore, neither prong of the *Strickland* test was met.

*Maqbool*, 2013 WL 57683 at *7.

Petitioner now argues that despite counsel listing several possible trial witnesses on the court's witness list at the start of trial, they did not present the testimony of the majority of these individuals. (ECF No. 9 at 58.) Petitioner names the following individuals as potential defense witnesses that counsels failed to present to the jury: Maqbool Hussein, Adeel "Eddie" Maqbool, Sara Malick, Theseen Syed, Kenny Chong, Sam Awad, Ali Zaidi, and Monica Malloy. (*Id.*)

With respect to Petitioner's father, Maqbool Hussein, Petitioner argues that his testimony would have supported Petitioner's alibi. Petitioner claims that his father saw him in their Parlin, New Jersey home at around 1:00 a.m. on November 1, 2002, around the same time that the murders

were determined to have ended.  However, as the Appellate Division noted, while Petitioner claims that his father provided this information to trial counsel, Maqbool Hussein's transcribed statement, that was submitted in support of the PCR petition, does not indicate the same.  As for Adeel Maqbool, the supposed alibi testimony that Petitioner proffers is not alibi testimony at all. Petitioner claims that his brother could have testified that he saw Petitioner at home at around 2:30 p.m.  (ECF No. 9 at 59.)  The Petitioner does not allege what day this occurred.  Petitioner also alleges that his brother, Adeel, could have testified that Petitioner attempted to speak to law enforcement prior to his arrest and would have also provided testimony that refuted Lieutenant Russo's testimony that Petitioner requested an attorney in his interrogation.  (ECF No. 9 at 60.) Petitioner does not indicate how Adeel Maqbool was privy to this information other than from Petitioner's self-serving comments, particularly the claim that Petitioner requested an attorney, since the record reflects who was in the interview room with Petitioner.

Petitioner next argues that Sara Malick, Sam Awad, and Kenny Chong "would have completely debunked the State's contention through the testimony of Jawad 'Jay' Mir."  Petitioner does not indicate how any of these witnesses would have undermined Mir's testimony. Additionally, Petitioner claims that Ali Zaidi could have established that Petitioner's additional cellular phone lines were not opened for the purpose of furthering the crime.  (ECF Nos. 9 at 60, 9-1 at 1.)  Petitioner alleges that Zaidi, who was the T-Mobile sales representative who opened the phone lines, would have undermined the argument that Petitioner opened these additional lines for nefarious reasons.  (*Id.* at 9-1 at 1.)  Finally, Petitioner claims that Monica Malloy could have bolstered defense witness Angela Williams's testimony that the man she saw leaving the second crime scene did not resemble the Petitioner.  (*Id.*)

Petitioner has not put forth sufficient facts or arguments supporting how the aforementioned individuals' testimony would have changed the outcome of the trial. *See Palmer v. Hendricks*, 592 F.3d 386, 393 (3d Cir. 2010) ("[A] court should be reluctant to convene an evidentiary hearing to explore the claims of a petitioner whose pleadings are factually insufficient to suggest any entitlement to habeas relief."). Moreover, Petitioner's argument that counsel's failure to compel Monica Malloy's testimony was ineffective falls short as well. According to Angela Williams, she was outside on a cigarette break conversing with her cousin, Malloy, when she observed men leaving the area of the discarded burned vehicle containing decedents' remains. But Petitioner fails to provide sufficient evidence that Malloy would have testified in this manner.

Petitioner has not demonstrated how counsel's failure to procure this testimony was ineffective under either *Strickland* prong. Accordingly, the state court's summary denial of the foregoing claims as unmeritorious was not an unreasonable application of clearly established federal law. *See Cullen*, 563 U.S. at 217-18. Consequently, relief is denied on this ground.

6. Failure to Object to the Trial Court's Accomplice Liability Instruction and Subsequent Response to a Jury Question

Petitioner argues that trial counsel's inadequate response to the trial court's accomplice liability jury instruction led to potential confusion amongst jurors about Jawad Mir's role in the crime. (ECF No. 9-1 at 20-24.) Petitioner provides an uncorroborated assertion that Mir entered into an agreement with the prosecution. (*Id.* at 23.) He further argues that trial counsel subsequently failed to object to the trial court's response to a jury question about Mir. During the jury deliberations, the trial court received the a note from the jury about Mir. The trial court responded as follows:

> First, the jury would like to know if Jawad Mir received a deal from the prosecutor. My recollection of the testimony in the case is that

> there is no evidence indicating whether there was a deal or there
> wasn't a deal, it simply wasn't covered during the course of the trial.
>
> Now, obviously my recollection doesn't control yours.  If you like,
> we can read his entire testimony back to you and you could hear it
> yourself and examine the testimony yourself.  That's your option.
> You have to decide whether you want to do that when you go back
> into the jury room.

(ECF No. 19-77 at 9.)

Petitioner submits that the jury's question reflects that the jury shared Petitioner's skepticism about Mir's credibility or potential bias.  (*Id.*)  Petitioner argues that had the trial court informed the jury of Mir's cooperation with the government, then the jury could have considered that information when applying the accomplice liability instruction.  (*Id.*)  Petitioner argues that this particular question from the jury should have prompted trial counsel to ask for clarification from the judge.

Petitioner first raised this claim in his PCR petition.  (ECF No. 19-21 at 5-6.)  The Appellate Division summarily denied this ineffective assistance claim along with several other claims as bald assertions and also noted "there was nothing inappropriate about the judge's instructions to the jury." *Maqbool*, 2013 WL 57683 at \*8.

The Third Circuit has articulated that when jury instructions are challenged, the Court will "consider the totality of the instructions and not a particular sentence or paragraph in isolation." *United States v. Coyle*, 63 F.3d 1239, 1245 (3d Cir. 1995).  The central issue is "whether viewed in light of the evidence, the charge as a whole fairly and adequately submits the issues in the case to the jury." *United States v. Zehrbach*, 47 F.3d 1252, 1264 (3d Cir. 1995) (internal quotation marks omitted).

Contrary to Petitioner's claim, the record reflects that trial counsel objected to the accomplice liability instruction immediately after the trial judge provided that instruction.  (ECF

No. 19-75 at 94-97.)  Trial counsel objected to the court's using an actual charged offense as an example that it provided to the jury.  (*Id.* at 94.)  Trial counsel asked the court to rephrase the instruction's examples so that instead of using a charged offense such as murder, the court would just use the word "act."  (*Id.* at 94-95.)  Counsel also asked the trial court to emphasize the causation requirements of all of the elements.  (*Id.* at 97.)  With respect to trial counsel's reaction or lack thereof, to the jury's question about Mir, the question and the judge's answer did not require clarification.  Petitioner cannot show that he was prejudiced by his counsel's failure to ask for a clarifying instruction that includes facts that were not in evidence.

Petitioner does not specify what exactly trial counsel should have objected to with respect to the accomplice liability instructions.  Moreover, Petitioner seems to conflate the jury's question about whether Mir obtained a "deal" from the prosecution with the accomplice liability instruction. Finally, Petitioner's argument totally negates the fact that multiple actors were involved in the crime and nothing about the trial court's accomplice liability jury instruction suggested the liability of one actor over another.

The state court's denial of Petitioner's ineffectiveness claim was reasonable.  Petitioner has not identified an erroneous jury instruction for trial counsel to have raised an objection.  *See United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999) ("[t]here can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument.") Moreover, Petitioner has not established a nexus between the allegedly erroneous instruction and the jury's question.  As a result, Petitioner is denied habeas relief on this claim.

7.   Failure to Object to Admission of Inadmissible Hearsay at Trial and Failure to
     Raise the Issue on Direct Appeal

    i.      Ineffective Assistance of Trial Counsel

Petitioner's final claim of ineffective assistance of trial counsel stems from an alleged Confrontation Clause violation during the prosecution's closing arguments.  (ECF No. 9 at 49-53.) Petitioner claims that counsel failed to object to repeat references to Amit "Andy" Vishal's out-of-court statements.  Petitioner initially raised this claim in his PCR Petition, and it was summarily denied by the PCR Court alongside several other claims, as "procedurally barred, rel[iant] upon either bald assertions or are supported by factual assertions of the Defendant and are therefore without merit."  (ECF No. 19-90 at 30.)  The Appellate Division also summarily denied this claim for lacking merit, alongside several other claims.  *Maqbool*, 2013 WL 57683 at *8.

Jawad Mir, an eyewitness to one of the victim's murders, provided extensive testimony about the days leading up to the murder as well the day after.  (ECF No. 19-55, 56.)  Mir who was also in the telecommunications business, travelled to New Jersey from New York City along with his business associate, Andy, on October 31, 2002.  Mir testified that both him and Andy were forced to watch the elder Ahn's strangulation and, at one point, Petitioner even ordered Mir to shoot the younger Ahn, although he ultimately did not shoot him.  Mir's testimony detailed the intimidation that Petitioner used to demand both men's silence, including threatening the safety of their relatives overseas.  Mir testified that both he and Andy returned to New York City the next day with ten thousand dollars, of presumably hush money, provided to them by the Petitioner. While Mir testified that he remained in New York, it was his testimony that Andy returned to India.  In their closing arguments, the prosecution referenced some of Mir's testimony to support their theory of the case.

35

The Sixth Amendment's Confrontation Clause, which is binding on the States through the Fourteenth Amendment, provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  The standard for determining Confrontation Clause violations in criminal trial proceedings was outlined in the United States Supreme Court's opinion in *Crawford v. Washington*, 541 U.S. 36 (2004).  In *Crawford*, the Supreme Court held that the prosecution could not use the police statement of a wife against her defendant husband at trial, where the wife was unavailable as a witness due to the spousal privilege.  Admission of the statement violated the Confrontation Clause.  *Id.* at 68-69.

During the prosecution's closing arguments, several references were made to Mir's testimony, detailing what he and Andy experienced during those last few days of October 2002 and first few days of November 2002.  Yet, the closing arguments never mentioned any statements made by Andy.  Even the excerpts of the closing arguments that Petitioner cites to only cite to all the instances that the prosecutor mentioned Andy's name.  (ECF No. 9 at 51-52.)  Given that the closing arguments did not contain any hearsay statements by Andy, trial counsel was not ineffective for not making a legally invalid objection.  The state court's application of clearly established federal law was not unreasonable.   Petitioner is denied habeas relief on this ground.

        ii.     Ineffective Assistance of Appellate Counsel

Petitioner argues his appellate counsel was ineffective because counsel failed to raise the trial court's erroneous admission of hearsay statements.  (ECF No. 9 at 53-57.)  Petitioner initially raised this claim in his PCR Petition, and it was summarily denied by the PCR Court alongside several other claims, as "procedurally barred, rel[iant] upon either bald assertions or are supported by factual assertions of the Defendant and are therefore without merit."  (ECF No. 19-90 at 30.)

The Appellate Division also summarily denied this claim for lacking merit, alongside several other claims. *Maqbool*, 2013 WL 57683 at *8.

At trial, Lieutenant Russo gave the following testimony when describing parts of Petitioner's post-arrest interview.

> PROSECUTOR:  Why did you tell him that what he was saying was not the truth?
>
> RUSSO:  Well, during the course of this interview I was being fed-
>
> BEAM:  Objection, Judge.
>
> RUSSO:  I'm sorry.
>
> THE COURT:  Don't tell us specific information, sir, about what you were told.  The fact that you may have been told something is not objected to, but don't tell us what you've been told.
>
> RUSSO:  I learned?
>
> THE COURT:  I want you to tell us what you did.  The fact that someone may have told you something that led you to do something is okay.  I don't want you to tell us what they told you.
>
> RUSSO:  During an interview, which is a normal procedure, I would on occasion leave the room and be instructed as to what is going on as far as the investigation is, which way its turning, therefore, I could get ammunition when I go back in a room and find out are we telling the truth, are we on the right course of gaining the truth, and I ended up knowing that.
>
> PROSECUTOR:  Did you tell the defendant any information that you had gotten?
>
> RUSSO:  Referring to my notes.
>
> PROSECUTOR:  Referring to your report, sir?
>
> RUSSO:  I'm sorry, my report.  I told Tariq that Zaid and Maribel were being spoken to - -
>
> DINARDO:  Again, objection.

RUSSO:  I'm sorry.

THE COURT:  I'll hear you at side bar on that.

(The following takes place at side bar.)

THE COURT:  So far his response is not objectionable.

DINARDO:  Well, he's going to say what Maribel and Zaid said, because he's –

THE COURT:  I've instructed him not to do that, and I have no reason to anticipate that he will.

PROSECUTOR:  He's been instructed not to, Judge.  I think what he said so far -.

THE COURT:  It's perfectly fine, there's no objection to that.

MR. BEAM:  Judge, this is no different than situation where a police officer says I spoke with a confidential informant, and after I spoke with the confidential informant I locked up somebody else.  It clearly –

THE COURT:  No, I think it's clearly different than that, sir.  Sir, what he's doing is reporting a fact, and that is, that Maribel and Zaid were being spoken to.  That's a fact.

MR. BEAM:  And what he said is that based on that I, basically, that this guy wasn't telling the truth, so it's inferring to the jury what they know that these two other people are saying.

THE COURT:  It may very well be, I mean, that's the subject of cross-examination, but it's not - - that's what the State wants the jury to get, that this witness believed, based on information that he got, that he wasn't getting the truth from your client.  That's what he did.

MR. BEAM:  All right.  As long as that's on the record, that's all I can do.

THE COURT:  It's on the record.

(The following takes place in open court.)

PROSECUTOR:  Judge, could I just have that last answer read back?

(The reporter reads back the last answer.)

> PROSECUTOR:  When did you tell the defendant that Zaid and Maribel were being spoken to?
>
> RUSSO:  Right before we took a break.
>
> PROSECUTOR:  After he gave the first version of events?
>
> RUSSO:  Correct.

(ECF No. 19-60 at 72-74.)

For hearsay purposes, statement is a "person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." Fed. R. Evid. 801(a). New Jersey Rule of Evidence 801(a) provides the same. Here, the Petitioner has not identified any of Zaid or Maribel's statements. Certainly, the content of any verbal or written statement has not been identified. Lieutenant Russo testified that he questioned the veracity of Petitioner's post-arrest statement because he was also learning information from Zaid and Mirabel. The trial court gave a clear instruction to the witness that he could not testify about what Zaid or Maribel said, and Lieutenant Russo obeyed the instruction. Trial counsel made the appropriate objection and made a reasonable argument that even if the substance of the statements were not revealed, the jury could infer the substance. Yet, the State was not offering the substance of the statements as proof that the assertions in the statements were in fact true. As noted, the content of the statements were not provided to the jury. Instead, the fact that Zaid and Maribel spoke with law enforcement was being used for a different reason – to demonstrate the impetus for Petitioner's subsequent statements to Lieutenant Russo.

Petitioner has failed to meet the first *Strickland* prong, showing that his appellate counsel's failure to raise the hearsay admission "fell outside the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Trial counsel's objection to the statement and the

subsequent sidebar discussion provided a robust record for direct appeal counsel to analyze.  After reviewing the trial court's basis for admitting the contested statement, appellate counsel may have reasonably deemed it an unmeritorious or insignificant argument to raise before the Appellate Division.  In any event, Petitioner has not satisfied *Strickland's* prejudice requirement.  Plaintiff has not shown that if appellate counsel had raised the issue that there is a reasonable probability that the result of the appeal would have been different.  Therefore, appellate counsel cannot be deemed ineffective for failing to raise an issue that would not have resulted in the reversal of his client's conviction.  *See Buehl v. Vaughn*, 166 F.3d 163, 174 (3d Cir. 1999).  Petitioner is denied habeas relief on this ground.

Accordingly, all of Petitioner's claims of ineffective assistance of trial/appellate counsel are denied.

D.    Trial/PCR Judge's Bias Against Petitioner.

Lastly, Petitioner argues that Judge De Pascale's comments and rulings against the Petitioner at the pre-trial suppression hearing and the PCR hearing, demonstrate the judge's bias towards Petitioner.  Petitioner submits that the Judge De Pascale's credibility finding against Petitioner was emblematic of the judge's bias.  At the *Miranda* suppression hearing, Judge De Pascale heard conflicting accounts of the circumstances of Petitioner's arrest and his subsequent statement.  Petitioner's account was contrary to Lieutenant Russo and Detective Wagner's testimony.  At the close of the hearing, Judge De Pascale denied the motion to suppress the challenged statements, after the judge made several factual findings.  Judge De Pascale said that "I make those findings because I find Detective Russo's credibility to be superior to that of the Defendant's on this issue."  (ECF 19-52 at 72.)  That was the extent of the judge's comments about Petitioner's credibility.  Petitioner also claims that the judge's bias was evident because of his

40

"jesting" and "joking" with Lieutenant Russo while he was on the stand.  (ECF No. 9-1 at 26.) However, the suppression hearing record does not reflect any improper behavior or comments on the judge's part and Petitioner's uncorroborated claim about a bias in favor of Lieutenant Russo does not support his argument.

A review of the PCR record, as well, reveals no bias on the part of the judge.  Every comment that Petitioner's cites as evidence of bias are, in fact, credibility findings with respect to the various claims that Petitioner raised.  By the time of the PCR hearing, Judge De Pascale was quite familiar with Petitioner's case as he presided over the pre-trial proceedings, trial, and sentencing.

"In order to demonstrate judicial misconduct for purposes of habeas relief, a petitioner must show actual bias and that he was treated unfairly by the trial judge.  *See Byard v. Hauck*, No. 07-5069, 2009 WL 114419 at *14 (D.N.J., Jan. 15, 2009) (citations and quotations marks omitted). "A mere allegation or the mere appearance of bias does not establish bias."  *Id.*  (citation omitted).

The Petitioner has not demonstrated that the judge was biased, and there is no evidence in the record to support Petitioner's claim.  As such, Petitioner has failed to raise a viable constitutional claim and this claim is denied habeas relief.

## VI.    CERTIFICATE OF APPEALABILITY

This Court must determine whether Petitioner is entitled to a certificate of appealability in this matter.  *See* Third Circuit Local Appellate Rule 22.1. The Court will issue a certificate of appealability if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Based on the discussion in this Opinion, Petitioner has not made a substantial showing of denial of a constitutional right, and this Court will not issue a certificate of appealability.

**V.     CONCLUSION**

For the reasons discussed above, Petitioner's habeas petition is denied.

An appropriate Order follows.


Dated: May 11, 2018                          s/ John Michael Vazquez
                                             JOHN MICHAEL VAZQUEZ
                                             United States District Judge